**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**VIOLA GILPIN,**

    **Plaintiff,**

v.                                                                                                  Case No. 8:08-cv-1079-T-TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was fifty-two years of age at the time of her administrative hearing in October 2007. She stands 5' 7" tall and weighed 160 pounds. Plaintiff has an eighth grade education. Her past relevant work was as a warehouse worker, apple packer, plant setter, cashier, and ticket taker. Plaintiff applied for disability benefits and Supplemental Security Income payments in June 2006, alleging disability as of June 1, 2005, by reason of back

problems with associated pain and arthritis in her hands.[1]  The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by a non-attorney representative and testified in her own behalf.

In essence, Plaintiff testified that she is unable to work due to dropping things, her back bothers her, she cannot lift, and she cannot stand for any period of time.  She cannot pick up or hold onto anything in either hand because of arthritis in her fingers.  She stated she has pain in her hands all the time and experiences swelling of the joints about every other day. Plaintiff testified she can hold a pencil with one hand but needs both hands to hold a glass or a gallon of milk.  Plaintiff indicated the problem with dropping things has been happening for a while but has gotten worse in the last three to four months.  She is unable to thread a needle or pick up change from a counter.  She also has pain in her back and in her left elbow.  Plaintiff testified that the pain in her elbow happens about three times a day, and it will "pop."  She described the back pain as burning and mostly in her lower back, but it travels up and down her back.  She rated the back pain at a nine on a scale of one to ten with ten being the highest pain. Plaintiff is unable to sleep through the night because of the pain.  Due to financial reasons, she is not under a doctor's care and therefore does not take any prescription medication.  She does take extra strength Tylenol daily to help with the pain.

---

[1]At the hearing, the alleged onset date was amended to March 1, 2006, chiefly because of Plaintiff's earnings history.

Plaintiff testified she could walk less than a half block before experiencing pain down her legs, and then she has to stop and catch her breath. She can stand for approximately five minutes and sit for two to three minutes before her back hurts. She cannot bend at the waist.

Plaintiff's limited daily activities include watching television and lying down or reclining for about five hours out of the day. Plaintiff is able to do some cooking, but her niece goes with her to the grocery store and takes care of the yard work and household chores. (R. 24-39).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Plaintiff's date last insured for disability benefits was December 31, 2006.

By his decision of November 29, 2007, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease of the lumbar spine and osteoarthritis of the fingers in both hands and was status post lumbar fusion (remote), she nonetheless had the residual functional capacity to perform a full range of light exertional work. Upon this finding, the ALJ concluded that Plaintiff could perform her past work as a cashier and ticket "writer."[2] Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 8-16). The Appeals Council denied Plaintiff's request for review.

---

[2] While Plaintiff reported in one of her administrative filings that she had prior work as a ticket writer (R. 111), she indicated in other submissions and testified at the hearing that her prior work was as a ticket "taker." (R. 35, 126-27). In any event, while the ALJ concludes Plaintiff can perform past work as a ticket "writer," the Dictionary of Occupational Titles ("DOT") job description he cites is for that of a ticket "taker." *See* DOT § 344.667-010.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises five claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred by failing to find that Plaintiff had handling and fingering limitations;

(2) The ALJ erred by failing to set forth the manipulative requirements of Plaintiff's past relevant work;

(3) The ALJ did not consider the specialty of the medical advisor to the state disability determination service;

(4) The ALJ's statement that Dr. Springstead's finding was based entirely upon the subjective report of the claimant is not supported by the substantial evidence; and

(5) The ALJ did not make adequate findings regarding the Plaintiff's limitations as a result of her hand pain in order to make a full and fair determination as to whether she could return to her past relevant work.

In her first claim, Plaintiff asserts that substantial evidence does not support the ALJ's finding that she does not have a severe impairment as a result of osteoarthritis in her fingers. (Doc. 24 at 8). As the decision reflects, this assertion is simply incorrect. The ALJ expressly found that Plaintiff suffers a "severe combination of impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the bilateral fingers, and is status post lumbar fusion (remote)." (R. 11, 15). There is, however, no specific or express statement by the ALJ as to the functional limitations he associated with the impairment. This matter is closely associated with the issues Plaintiff raises in her second and fifth claims, and they are addressed together.

Essentially, Plaintiff urges in her first and fifth claims that the ALJ failed to make adequate findings concerning the functional limitations in handling or fingering related to the osteoarthritis in her fingers, bilaterally, such that the vocational assessment could properly be made. (Doc. 24 at 6-9, 14). By the second claim, she urges that the ALJ failed to set forth the manipulative requirements of her former work as a cashier and ticket writer and that such was critical to a proper determination of her ability to perform those jobs. *Id.* at 9-12.

In reaching his decision, the ALJ applied the five-step sequential evaluation process dictated by the Regulations. 20 C.F.R. §§ 404.1520, 416.920 The decision was reached at

the fourth step of the process. At this step, the ALJ must assess the claimant's residual functional capacity, which is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. In light of a claimant's residual functional capacity, the ALJ must then determine whether the claimant is capable of performing her past relevant work. This determination requires consideration of the physical and mental demands of the claimant's former work. In this regard, "the ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (emphasis in the original); *see also Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986). However, at this step, the burden is still upon the Plaintiff to prove that she cannot do this past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986)).

A determination that a claimant can perform her past relevant work, and thus is not disabled, is appropriate where the claimant retains the residual functional capacity to perform the actual functional demands and job duties of a particular past job <u>or</u> the functional demands and job duties of the occupation as generally required by employers throughout the national

7

economy. SSR 82-62, 1982 WL 31386, *3 (S.S.A.);³ SSR 82-61, 1982 WL 31387, * 2 (S.S.A.). Where it is determined that a claimant can perform her past job as she performed it, the claimant's statements regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. SSR 82-63 at *3; *see also* SSR 82-61 at *2 (stating that a vocational report completed by the claimant may be sufficient to furnish information about past work). And, where it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the Dictionary of Occupational Titles ("DOT"). *See* SSR 82-61 at * 2. While the claimant bears the burden at this step of demonstrating an inability to return to her past relevant work, the ALJ has a concomitant duty to develop a full record in this regard. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990) (citing *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987); *Nelms*, 803 F.2d at 1165).

Upon consideration, while the ALJ undoubtedly could have explained his findings concerning Plaintiff's osteoarthritis of the fingers in greater detail, a fair reading of the decision reveals an adequate consideration of the same which permits the vocational decision reached by the ALJ. From my review of the decision and medical record, it is apparent that although the ALJ never expressly stated the degree of limitation associated with Plaintiff's osteoarthritis of the fingers, his conclusion that such was not as significantly limiting as claimed by Plaintiff may be clearly inferred from his review of the medical evidence and his conclusion as to Plaintiff's residual functional capacity ("RFC") for light and sedentary

---

³Social Security Rulings are binding on all aspects of the Social Security Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. Unit A Sep. 1981).

8

exertional work.[4]  On the vocational issue, the ALJ relied upon the DOT for his conclusion that Plaintiff could still perform the work of a ticket taker and cashier as such was generally performed.  Even if the ALJ failed to fully develop with the Plaintiff the requirements of such jobs as she actually performed them, the DOT provides the substantial evidence to support the conclusion.

In determining the Plaintiff's RFC, the ALJ expressly acknowledged Plaintiff's testimony that she recently, within the last three or four months, had developed pain in her hands and was frequently dropping things due to an inability to grasp and grip.  (R. 12).  In discounting this subjective evidence and her complaints of back pain, the ALJ indicated that such was not supported by the objective or clinical findings in the record.  In particular, the ALJ cited to treatment records which offered little support for the claim and the consultative examination findings by Dr. David Miller and Dr. R.W. Springstead.  The findings of these doctors revealed evidence of mild to moderate arthritis bilaterally but no other significant findings to support the severe limitations claimed by Plaintiff.[5]  These findings were accorded

---

[4]Furthermore, although the ALJ did not explicitly find that Plaintiff had manipulative limitations with respect to handling and fingering, he credited the assessments of the nonexamining doctors who both reported that Plaintiff's ability to perform those activities was limited to "frequently," which means occurring one-third to two-thirds of an 8-hour workday. *See* (R. 198, 201, 210).  Those particular findings are consistent with Dr. Springstead's opinion that Plaintiff had handling and fingering limitations.  (R. 230).  The findings also do not preclude the ability to perform work as a ticket taker or cashier as such are described in the DOT.

[5]In September 2006, Dr. Miller found evidence of mild to moderate arthritis, mild edema of the hands, but 5/5 strength and grip strength bilaterally.  (R. 193).  In October 2007, Dr. Springstead found evidence of pain and tenderness in the "DIP" joint of her fingers and some stiffness with generalized weakness in hand grip, but good pulses and no sensory loss. (R. 228).

9

persuasive weight although the ALJ rejected Dr. Springstead's assessment that Plaintiff was disabled from all work. The ALJ also considered on the RFC assessments from two nonexamining doctors. Finding these assessments consistent with the medical evidence, the ALJ accorded these assessments considerable weight as well. Significantly, while the examining doctors gave no specific assessment of the hand limitations,[6] both nonexamining doctors assessed a limitation for "frequent" handling and fingering. (R. 201, 210). The decision to also afford considerable weight to the opinions of the nonexamining doctors was not inappropriate since such was uncontradicted by other medical evidence. And, more to the point, when the decision is read as a whole, the ALJ fairly assessed and addressed the limitations he found supported by the medical record.

In evaluating the vocational issue, the ALJ cited to both the DOT and Plaintiff's past performance as a ticket taker and cashier. Contrary to Plaintiff's suggestion, there was record evidence related to those jobs. However, even if the ALJ failed to fully develop Plaintiff's testimony concerning the handling and fingering components of this work as she performed it, he adequately addressed the matter by referencing the DOT.[7] Pertinent to the issue at hand, the DOT notes that the job of ticket taker requires frequent handling and occasional fingering.

---

[6]Dr. Springstead opined that Plaintiff had limited functional ability with regards to handling (gross manipulation) and fingering (fine manipulation). (R. 230). However, he did not expound further on the limitations or quantify the frequency with which Plaintiff could perform those manipulative functions.

[7]As the Commissioner notes, Plaintiff made statements about these former jobs in her administrative submissions which suggest that her former work did not require a lot of handling or grasping or writing nor work beyond the light exertional level. *See* (R. 127-28).

*See* DOT § 344.667-010.[8] The job of cashier requires frequent handling and fingering. *See* DOT § 211.462-010. In my view, accepting that the medical evidence supports the ALJ's RFC assessment for light work, then Plaintiff was capable of performing the jobs as generally performed despite the osteoarthritis in her hands. While she showed some evidence of pain and swelling as a consequence of her arthritis, there is no showing of functional limitations that would prevent light or sedentary exertional work of this type.

By her third claim, Plaintiff contends that the ALJ failed to consider the specialty of the nonexamining doctors *viz a viz* that of Dr. Springstead, who is an orthopedic surgeon. Pursuant to 20 C.F.R. §§ 404.1527(d), 416.927(d), Plaintiff urges that Dr. Springstead's opinions were entitled to greater weight than those of the nonexamining doctors because he provided an opinion within his area of speciality and examined Plaintiff, whereas the nonexamining doctors were not finger or bone specialists and had not examined Plaintiff. (Doc. 24 at 12-13).

In principle, Plaintiff is correct. However, as urged by the Commissioner, the ALJ thoroughly addressed the findings of Dr. Springstead (and accepted the same) and gave numerous reasons for discounting his ultimate assessment that Plaintiff was incapable of even sedentary work. By and large, the reasons for rejecting this assessment were related to a lack of clinical support for any disabling condition and the conclusion that the doctor's findings

---

[8]This particular job description pertains to ticket taker, industry designation: amusement and recreation. *See* DOT § 344.667-010. While that is not the industry in which Plaintiff worked, she does not challenge the ALJ's citation to that provision and my review of the DOT does not reveal a position of ticket taker in the construction industry. In any event, the ALJ's citation to the DOT provision for cashier (cashier II) appropriately corresponds with the work Plaintiff performed as a cashier.

11

did not support his ultimate assessment. By my review, these reasons are largely supported by substantial evidence. Treatment records do not support a disabling condition. The other consultative examiner, Dr. Miller, made similar findings upon examination including normal muscle strength and grip strength and a generally normal range of motion and gait. In the end, the ALJ found that the findings of these doctors supported his RFC assessment for light work. No error in that finding is demonstrated on this appeal. Given that the findings of the nonexamining doctors did not conflict with those of any treating or examining doctor, I find no error in the ALJ's decision to give their assessments considerable weight as well, despite their specialty or lack thereof.

Finally, Plaintiff urges in her fourth claim that the ALJ erred by concluding that Dr. Springstead's conclusions were based entirely on her subjective reporting given that the doctor had noted objective findings of Heberden's nodes.[9] By my review, while arguably not entirely accurate, the statement is not totally incorrect when read in context. In addressing the opinion evidence and Dr. Springstead's opinion in particular, the ALJ noted that while the doctor had noticed generalized weakness in hand grip, there was no evidence on examination of joint heat or swelling and the doctor did not conduct imaging or nerve conduction studies which would have been supportive of chronic finger/hand numbness. Because of this lack of clinical evidence in the doctor's report, the ALJ concluded that the doctor's finding of osteoarthritis of the fingers was based entirely upon the subjective report from the Plaintiff and, absent any clinical support, the doctor's opinion was given little weight. Even if the ALJ

---

[9]According to the Commissioner, Heberden's nodes are defined as "a bony enlargement of the terminal joint of a finger commonly associated with osteoarthritis." (Doc. 25 at 12, n.9).

12

missed the significance of the doctor's observation of Heberden's nodes, the fact of the matter is that Plaintiff was credited with a severe condition, i.e., osteoarthritis of the fingers, bilaterally. The ALJ's failure to note the Heberden's nodes does not invalidate his rejection of the doctor's opinion that Plaintiff's subjective symptoms were not as limiting as either she or her doctor claimed. As the Commissioner urges, the ALJ offered a number of reasons for discounting the doctor's assessment (and the Plaintiff's credibility) which effectively found Plaintiff disabled from any work. The alleged error here does not seriously call into question the ALJ's overall conclusions such that a remand is warranted.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 2nd day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record